Hear ye, hear ye, hear ye, dishonorable public court of the 2nd District is back in session. Pursuant to adjournment, the Honorable Robert D. McLaren is invited. Please be seated. Your Honor, this is the second case of the morning. Call 2-12-0507. People of the State of Illinois v. Christo L. Floyd. On behalf of the apparatus, Mr. Patrick F. Cassidy. On behalf of the appellee, Ms. Colleen Q. Price. Mr. Cassidy. You may proceed, Counsel. May it please the Court, Counsel. My name is Patrick Cassidy. I represent Christo Floyd, the appellant in this case. Your Honor, there's four issues in our briefs. They all involve how the State tried to prove the defendant was intoxicated under the influence of alcohol. I'm going to begin, if I may, by discussing the first issue, which involves an expert's attempt to estimate her blood alcohol level at the time of the incident. Could we clarify the record, or at least our understanding? This defendant was only charged with driving a level of blood alcohol in her body and not with driving while impaired? No, I think she was driving while impaired, Your Honor. As well as having .08 or more? No, Your Honor. No. Unless I'm mistaken. I'm talking about she wasn't charged like some people are, which is having a quantity of blood alcohol in addition to an additional count that she was also driving while under the influence without a blood alcohol level. That's correct, Your Honor. Thank you. And so the State attempted to prove her blood alcohol level because, of course, if you can prove that it's over .08 at the time, then the jury can presume she's under the influence and they don't have to do any further analysis if they don't want to. So the State had an expert attempt to estimate based on a test that was done 80 minutes later. Eighty minutes? Eighty minutes, Your Honor. I believe 10.30 p.m. the test was taken. The incident was around 9.10 p.m. And so this is a calculation, this retrograde extrapolation calculation, and it's only valid if the defendant's eliminating alcohol for the entire time period. If she's absorbing it, the calculation's invalid and, in fact, too high. And so the rule we want this Court to adopt today is that where there has been only one test and that test has been some significant time after the incident we're interested in, then the expert has to take into account and consider the various factors that go into determining whether the defendant was eliminating or absorbing alcohol at an earlier time. Well, let's break that down a little bit. Is there any case law that stands for the proposition that one test, one simple test, is not sufficient? Sufficient to? There is the case law that was set in our briefs, Armstrong. Are you talking about? I'm sorry, Your Honor. That's from the Supreme Court of Nevada. Correct, Your Honor. There's no case law, I don't think, on this in Illinois in a criminal case that asks how retrograde extrapolation evidence should come in. When is it more prejudicial than probative because there's no probative value to the opinion because the expert hasn't done this examination of whether she was, in fact, eliminating alcohol? Weinstein indicated that, sort of segwaying into your argument, that his testimony would be valid if the defendant was in the post-absorption phase, correct? Exactly, Your Honor. And he gave a time limit, 80 minutes. Wasn't she in the post-absorption phase? Oh, I see. I mean, he says, I'm assuming, my calculations, my testimony is valid only if he has a contingent on her being in the post-absorption phase. Correct. Isn't the evidence in the record establishing that she was, in fact, in the post-absorption phase? No, Your Honor. So she has to be in the post-absorption phase, not just at 10.30 when the breathalyzer test is conducted, but at 9.10 p.m. when the time that she's charged with being under control of the cop. So that's 80 minutes earlier. She has to be in the post-absorption phase that entire time. So if she had a drink at 8.30, perhaps as early as 8.15 or 8 o'clock, then she could be absorbing alcohol at 9.10, and then that calculation is incorrect. And so the expert admitted he didn't do anything to determine whether or not she was eliminating alcohol. He wasn't asked to do it. He didn't take into account the significant factors, which are what she ate, what she drank, and when she drank it. But he also didn't take into account the other factors that he was aware of, gender, height, weight, because he didn't care. He wasn't asked to do that. All he was asked to do was to take a number, .069, which is below the legal threshold at 10.30, and add a .01 to it for every hour. Well, anyone can do that. That gave him the lower bound of .082 at 9.10. Yeah. But what we, what, you know, anyone can do that. But the jury needs to know is, does that calculation have any validity? Because is she eliminating alcohol at 9.10? How do you distinguish this case from the Petrosky v. Jannik case? Well, Your Honor, I think one major distinction is that if you look at Petrosky, it's a civil case. The plaintiff assumed the defendant, the defendant's got an expert giving this type of testimony as to what the plaintiff's blood alcohol content was. And you're correct, as here, the expert in that case did not take into account these factors. The appellate court upheld them. But I think we need to look at why the appellate court said that it was okay to assume that the defendant, or the plaintiff in that case, was eliminating alcohol. One of the reasons it pointed out was that the plaintiff hadn't come up with any evidence to show, to rebut that. Because in a civil case, the plaintiff came up with something. The plaintiff had a burden of proof, whereas in this case, the defendant does not. The appellate court in Petrosky certainly suggested, its analysis suggested, the plaintiff, it was going to assume, unless the plaintiff showed otherwise, that she was eliminating alcohol. Here, the defendant can't be put, the burden cannot be put on the defendant in this case. Well, what about this language? The court stated in Petrosky, We do not believe the expert's assumption that Petrosky's BAC was in the elimination phase when her blood was drawn was unwarranted. The blood draw took place at least an hour and a half after the collision. Right. Well, we know that she was in custody for at least eight minutes, right? Well, we're interested, though. We're not interested. So the eight minutes doesn't matter. I shouldn't say it doesn't matter. It's the time before 9, 10 p.m. We know she needs to be eliminating alcohol for that entire 80 minutes. You're saying that if she drank a pint of scotch 10 minutes before she was arrested, her readings were going to continue to go up. That's true, Your Honor. And they would have been higher at two hours. Right. So that's true. If she drank something shortly before she was arrested at 9, 10 p.m., she was going up. And so that means she would have peaked after 9, 10 p.m. and then begun eliminating. And if that's the case, you can't do this calculation. So simply, what rule would you like us to adopt? When there's only one test. Because, of course, if the police conduct more than one test, it becomes much easier for the expert to tell where she is on this graph. There's only one test if it's a significant time after the incident, the collision or the arrest. Then the expert has to take into consideration these factors and make a determination whether she was eliminating or absorbing alcohol at the target time. That's a test, we think. When you say that he wasn't asked to do certain things in this extrapolation, doesn't the extrapolation, the retrograde extrapolation, actually require him to take into account these things, whether the state asks him to or not? I would think so, but his testimony was not that that was the case. I read his testimony saying, I'm just asked to add .01 per hour for a lower amount, .02 per hour for an upper amount. Well, you could get any junior high math teacher to do that. So why did they hire this person who's allegedly an expert in the area? Because as courts are aware, experts, scientific evidence and experts hold so much sway with jurors. And again, here, we have this .08 threshold that the state is telling the jury and the courts instructing the jury, if you find she's over .08, if you want it to be, that's it. You don't have to do any more analysis on whether she's impaired. And so they get an expert to do this childlike, simple calculation because the jury is looking for a neutral, objective observer to tell them something or other. But didn't the jury hear the fact that on either, I think it was both on direct and certainly on cross-examination, that he did not plug in, for lack of a better term, these other factors and that could impact his calculation? They did, Your Honor. And this brings up the difference between a foundational objection, which is not what we're pursuing, and a Rule 403 objection. You know, the state says, well, shouldn't it go to wait because some of this is brought up. They didn't respond to that argument, right. And Rule 403 requires a judge even to exclude even relevant evidence, even evidence that has obviously a foundation and is relevant, if its probative value is substantially outweighed by unfair prejudice. Here, this expert's probative value of his opinion in the absence of a determination that she was eliminating alcohol was near zero. Yet his stature as an expert is going to hold sway with the juries. So it's going to mislead the jurors. It's going to hold too much sway and it's going to, the balancing is going to tip in favor of exclusion. And that's. And how did he, I mean, in that testimony, how did he come to the conclusion that he used that he assumed she was in post-absorption? Did somebody tell him that or was that his own assumption? I believe it's his own assumption that all he was asked to do was, assuming that this is, that she's eliminating alcohol at the start of time, what would she be at 9, 10 p.m.? She did. We do have a statement from her, I guess maybe at a motion to quash the arrest or something, where she said at about 730 that she was too drunk or she thought she shouldn't be driving because she was too drunk. And that statement got before the jury as well, didn't it? Your Honor, correct. And actually that statement, I believe, was at 9, 10 when she was arrested. Officer Drews testified that she made a statement that she was too drunk so she had to drive. So that was at 9, 10 as opposed to 7, 30? Yes. At 7, 30 we had the 911 call, which does have one relevant statement, I suppose, that she had a drink. But as we explained in Issue 2, we believe that the rest of that call was just unfairly prejudicial for all the particular statements that were just demeaning her. And perhaps more importantly, but also, the jury learned that she made that call through her car at 7, 30. The jury learned that an officer who talked to her shortly thereafter thought she was intoxicated. So there was nothing to prevent the jury from saying to itself, we don't need to determine whether she was over .08 at 9, 10 p.m. She must have been way higher at 7, 30 p.m. We can do the math, the simple math that the expert did. We can add some more ones and twos. And nothing prevented them from convicting her of an uncharged crime at 7, 30. That was the question, uncharged crime, other evidence. The call ostensibly relates to intoxication. I'm going to stay here and deduce that because of her voice, the way she's speaking on the call. What is the other offense that that phone call would relate to other than a DUI case? Well, there's two offenses. One is it's an uncharged DUI because she's in control of the car. Remember, the jury asked, they sent out a note and are told that you can be in control of a car just by having the keys in the ignition. So she's making that call. Uncharged DUI. So if you have a BAC count only, other relevant evidence of intoxication is totally irrelevant? Well, not necessarily, Your Honor. If there's a jury instruction, of course we make that argument that there had to be a jury instruction. But the 911 call, though, there was a statement in there, and I suppose the meter showed, well, the state alleged it showed intoxication. Let's look at this 911 call. This is a 911 report of a domestic violence incident with several statements that suggested that she was either paid or forced to perform sex acts. The state, no one, is going to tell me how that is relevant to a DUI. And I should point out that this has gone unrebutted, I believe, on appeal. And so I think this Court could decide this case on that. I have it preserved there. There's no claim of forfeiture. And there's no claim of harms. If she had blown an 11, would it have made any difference? I'm sorry, Your Honor. If she had blown an 11? Like a .11? Right. If she was going up or down, it wouldn't make any difference. She still was over 8. I think that would be probably correct, Your Honor. If she had blown a .11, I think that would be correct. So, again, because this is so close to that magic .08 threshold, that's why this is so important. If she was peaking, she could have been at .069, a 910, and a 1030, and her peak could have been somewhere in between. And then the jury wouldn't have been able to use that presumption. Does the fact that the statute makes a presumption of guilt when I believe the Constitution requires that criminal defendants be presumed innocent, does that have any impact on this? I believe that instruction requires the jury to find the underlying fact beyond a reasonable doubt. And so I think that's what the Jury Instruction Committee did to avoid that error. And I think that's what I took it to be. So, I mean, I did not look deeply into that question, Your Honor. It's a rebuttable presumption. I mean, doesn't the instruction say along with the other evidence in the case? Yes. The jury is not required to make that presumption. All right. Even if it is an 08. Exactly. Right. So I don't think there's a constitutional problem. What other evidence in the case is controverted relative to under control and intoxicated? There is no question that she was in the car, was there? No. Sleeping or on the front seat? Correct. All arguments are. There is no argument that the keys weren't in the ignition, correct? Correct. And as a matter of law, all you have to do is show actual control and impairment. Correct. And if actual control is shown by the keys in the ignition and she's in the front seat, whether she's alive or dead, well, it's a suggestion of death. But the impairment aspect comes up with the blood alcohol kind of thing. Exactly. And if there's a presumption, you're now putting this woman in a position where, gee, I don't know how she can rebut the presumption if, in fact, the 0.08 is competent evidence that the jury can presume. I don't know how you can rebut the presumption. It's a very difficult position. May I? As a practical matter, you may not. You have the right, certainly, to attempt to rebut it. But under those facts, it would be a hard sell. Correct. Right. And that's why the threshold is so important and why it's so important for there to be some appropriate value to the expert's testimony, some determination. That's why prejudice is more easily established in this case. I agree. Yeah, that threshold is key. I know my time is up. There are any other questions? No. Thank you. Thank you. Ms. Price? Your Honors, Counsel, may it please the Court, I'm Colleen Price for the people of the State of Illinois. I guess I'll just begin with Issue 1, as opposing counsel has. Really what it comes down to is defendant is attempting to change the standard of admissibility for expert testimony in Illinois, especially with regard to retrograde extrapolation. Here in Illinois, all you need to prove is that they are qualified as an expert in forensic toxicology with respect to retrograde extrapolation. They testify as to the formula, application, and its general acceptance in the scientific community, the FRI standard. And they clearly delineate the assumptions relied upon. And so that was met here. How did this witness clearly delineate the assumptions? He explicitly said that there are two assumptions he says that every retrograde extrapolation calculation relies on. Number one is that the person metabolizes, eliminates alcohol from their system at an average rate. I may be spitballing, but I think it's between .1 and .2, so they usually use .15. And that they are post-absorption and in the elimination phase. And so he clearly said that, and then that came out also on cross-examination by defense counsel. And counsel on appeal mentioned in his brief that trial counsel did say, so if these assumptions are incorrect, the calculation would be incorrect. And he said yes. Yes, exactly. He's challenging the assumptions. He's saying the evidence is not established. She was in the post-absorption phase. Well, so he's challenging the evidence, but he's also challenging, so, I'm sorry, he's challenging the evidence. That is something that the jury, that's the trier of fact, that this goes to weight whether or not they believe that these assumptions are met. And the evidence providing support for this was that there were a couple of the employees of the Dolphin Club watching her. The police officer testified originally, Officer Rowley, I think, he said how she was slurred speech. She also had a strong odor of alcohol. When was that, at 7.30? That was at 7.30, and then at the time of her arrest, she did not have a slurred speech. Her eyes were not glassy or red, but she resisted arrest. She tried to run somebody over, and she had a moderate smell of alcohol. So do we have any evidence, any scientific or otherwise evidence, that when you are in post-absorption, you don't slur your speech, your eyes are okay, and you'll resist arrest? No, but that goes, that doesn't go to the elimination, I'm sorry, what's your question? So are you saying that proof of post-absorption is that your eyes aren't glassy, you're not slurring your speech, and you are more likely to resist arrest? Is there anything that indicates that those are factors that indicate you are in post-absorption? Well, it indicates a lessening of intoxication throughout the evening. So a common sense would dictate that if her evidence of intoxication has lessened throughout the night, then it makes sense that she had quit drinking. She was sound asleep when they got there at 9-11. Most people, I mean, there's some common sense that when you're lit up, you're usually very, very tired. She was quite very active, and the police, right before, during the 9-11 call, when she was chasing somebody with her car through the parking lots, and then when the police came, I think the testimony was that their response was rather quick. And in that time, she had passed out. Is that evidence of post-absorption, that she passed out, or that she was sound asleep? I'm looking for evidence of post-absorption. And he said he assumed that she was. Yes. And what did he use to assume that? That is what the formula is. The, oh, I forgot. Whatstein was the expert in this, and the formula is by a Swedish scientist. Right. And so these assumptions, I'm sorry, aren't based on the evidence. This is what the formula is. Ma'am. The formula is based on these assumptions. Is this glass half empty or half full? And would it make a difference if I got an expert to tell this court which it were? Okay, for, defendant is making this 403 argument, and we maintain that this is an improper vehicle. These, this 403 argument is based on foreign authority. It's based on Texas and Nevada, which have a different standard for admissibility of expert testimony. They follow the Dober standard, which is this gatekeeping thing where they actually apply rule 403, where even though it's, except this formula is accepted. And we follow fraud. And we follow fraud. So that makes a difference in this case? Yes, it does, because we're in Texas and in these Dober states where the court may exclude expert testimony, where he feels that there are gaps between the evidence relied on by an expert and the conclusion of that expert. And then it's an abusive discretion standard. So whereas here in Frye, we have a general acceptance test. So the court doesn't have the discretion to find that it's more prescient than probative because there are gaps. Defendant's saying that there are gaps because you don't know her weight, you don't know the type of alcohol she was drinking, you don't know when she stopped for certain, when she stopped drinking, gender, things like that, all which go to the assumptions. The assumption is that the average population fits in this average elimination rate. So are you saying that if we accede to this argument that we are unquietly adopting, it's actually the Daubert standard as opposed to Dober, the Daubert standard. Is that what you're suggesting? Yes, I think that he is changing the standard by which we have retrograde extrapolation here in Illinois by applying 403. That's not the standard more prescient than probative. That is essentially applying Dober. Here we have general acceptance. It is generally accepted in Illinois that the retrograde extrapolation calculation is based on two assumptions, and whether or not those assumptions are fulfilled are up to the totality of the circumstances, the evidence presented at trial, and whether or not. Who makes the decision if those factors are fulfilled, the jury? Yes. Oh, really? Well, the two assumptions are that the person, our defendant. Let me just ask this question. The defendant metabolizes alcohol at the normal range. That's the first. And second, the person must be in post-absorption. So how do we know that she metabolized in the normal range if we don't have any evidence of her weight, her gender, although I suppose the jury could see that. Westie didn't take it into account. What she ate, when she drank, and when her last drink was. That does not affect whether or not she metabolizes in the normal range. The expert testified that all of that information goes to whether or not how she absorbs the alcohol. Well, then, so let's then, the person must be in post-absorption. He assumed she was in post-absorption. How? Because that's the formula, the accepted formula in Illinois. That's what the formula is. But you asked do you know how to apply the formula. Yes, and it is up to the state to prove that these assumptions are true. So we present the evidence. There was no contradicting evidence at trial that she did not absorb anything other than the normal range. Did the defendant have to prove that she? And I sound like I'm burden-shifting. It does sound like you're burden-shifting. Yeah, you are. If I was in a soundproof, windowless room, and I was there for anywhere from two to five days, didn't really know, and the clock on the wall said 11 o'clock, if I assumed that it was a.m., would that decision be any more credible that I assumed that it was the contrary, the p.m. instead of the a.m. or the a.m. instead of the p.m.? Because what I'm essentially doing is I have no input other than making an assumption as to whether or not it's morning or afternoon. And if that's all I'm doing is making an assumption, the fact that I say within a reasonable degree of chronological or timekeeping accuracy it's in the morning, should that opinion be given to any trier effect? I mean, it's like asking an aerodynamics engineer whether pigs can fly. And I know that they can. I've seen it. So, but the point is that this pig, you know, was this pig actually flying in the sense it was ascending or descending at the time? What evidence was there that she was in the post-absorption phase? The evidence is that from the surrounding circumstance, her breath changing from 7.30 to 9.10 when she was under arrest. It is that her speech wasn't slurring anymore. Although her car wasn't searched, the officer testified, which the jury could reject or not, whether or not there were alcohol containers. If you're going to apply the fact that it was 7.30, aren't you actually supporting or affirming the contention of Mr. Cassidy that this woman was being charged with the 7.30 offense and not the 9 o'clock offense? No. How can you use a fact at 7.30 on a later time and claim that this is evidence of decreasing metabolism? Because the evidence of decreasing metabolism is not the same as saying that they are guilty of a DUI earlier in the evening. Her intoxication is inextricably intertwined. This is the evening intoxication. It's a state. It's a state of drinking and getting to your peak, absorbing and then eliminating from your body. And so this evidence was relevant. There was a police officer who said, I didn't arrest her. Why didn't you arrest her? That I didn't arrest her because I didn't think she was in control of the car. Because when he came on the site, I think she was out of her car. And so he just told her, well, don't drive and left. And the totality of the circumstances, the explanation is that everything indicates that she was indicted for the 9.10. The evidence was sufficient for the 9.10. And defendant can't show that this was prejudice or that she was convicted for another crime. Because all the evidence and the argument point to when she was arrested. When she was actually driving and trying to run somebody over. But that's not what she was arrested for. She was arrested for sitting in the car, in control of the car with the keys in the ignition. She wasn't arrested for chasing whoever this mystery person was around the parking lot. But again, it's the surrounding circumstances of her intoxication. That's what sparked the 9.11 call. They didn't call 9.11 until she started driving around. And so when they arrived, she wasn't driving anymore. So the police weren't in witness of that. But they witnessed her in the car and had the probable cause to arrest her at that time. Did the expert ever say with a reasonable degree of scientific certainty that the assumption was accurate?  And that's what the formula is. And that's the accepted formula here in Illinois. Is that it relies on two assumptions. That you eliminate alcohol at the average rate. I've been a lawyer since 1969. And I've experienced some instances of cases where a defendant will say, evidence, uncontroverted statements like, I haven't drank anything since X period of time. And based upon that factoid, the expert extrapolated a level of blood alcohol. Was there anything in this case where this defendant gave any indication of whether or not she ceased consuming alcohol at a given point in time? Well, I can't remember if it was a pre-trial. She testified and she said that she had gotten at the park at 6.30 and had one drink. And things like that. So there was an indication there that she had claimed that she had stopped drinking. At what time? She said that she had gotten to the park at 6.30 and had one drink there. And that was actually confuted because one of the employees there saw her trip over something at 4 o'clock. But her statement is that she had a drink. 6.30 in the morning or 6.30 at night? 6.30 at night. Then why did she trip over something at 4? Again, that was her testimony. But she's testifying that she didn't have very much drink. And she stopped drinking. You said solid evidence on the record. That's just the thing that comes to mind. That was in the motion to suppress or motion to quash the arrest? But not before the jury? Because she didn't testify at trial. I'm pretty sure of that answer. I'm trying to get a handle on your assessment of the efficacy of this formula. An expert says this is the formula I use with these assumptions. So let's assume that's the testimony from the expert. And then the evidence in a given case would be the person had a breath test a half an hour after the last drink. So is your position that the formula trumps reality? What are you saying with the efficacy of this formula? You seem to be saying the formula comes in independent of anything else. No, what I'm saying is that we're, I mean, this formula has been accepted here in Illinois under the Frey standard. And so as long as the expert states the assumptions on which he relies when he makes this calculation. Even if the assumptions are contradicted by the evidence? Then if the assumptions are contradicted by the evidence, then the calculation would be valid. Well, who makes the decision? The trier of fact. So the jury basically is supposed to determine the efficacy of the test. The jury becomes the expert. Yeah. No, the jury does not become the expert. The jury's. Can't you see the problem? Yes, but I, no, I don't see the problem because these, this isn't what he raised. He didn't say that, that, that this average isn't viable. He's saying that, well, in Mata and the other case, the Nevada case. Armstrong. Armstrong, thank you. That weight and everything like that, that has nothing to do with whether or not they metabolize in the normal rate. All of those factors have to do with absorption. So this is the formula, and even adopting the Mata and Armstrong standards won't address whether or not that, the assumption of whether a person metabolizes within the average rate. It won't help that. In my early prosecutor days, which were, I'm not even going to tell you when, like Justice McLaren did, the state troopers always like to take us out and show us what it meant to get drunk and how to go through the process. And it occurs to me that I don't metabolize at the normal range. But what you're saying is I have to testify to that to defeat this theory. And if I do testify, then you're shifting the burden of proof to me. Isn't that what you're essentially saying? No, we would call in another expert to testify as to what factors would affect, change why you don't metabolize alcohol. Well, how would you even know if I didn't tell you? See, this is the problem. The assumption has to be based on something. And I'm not going to say, oh, by the way, I metabolize faster. Yes, and with all due respect, this is... I absorb faster. Yeah, I understand. But this is the generally accepted formula. And so it relies on these assumptions. And defendant is not challenging that formula and saying that that is inherently unreliable and everything. I mean that it relies on the assumptions. This is the formula. And it's up to the state to provide that evidence that shows that she could drink even more. But isn't he saying that the assumptions in this case are defeated by the evidence? Or lack of evidence. Or put another way, there isn't enough foundational evidence to conclude that one assumption, vis-a-vis another assumption that it's either ascending or descending, is more probably true or not true. If you shoot a gun at a target at some distance, the bullet will hit the target twice accurately because the bullet goes up in the air and comes back down. And if you set the target, say, at 50 or 60 yards, the bullet will hit the center of the target going up. And then at 120, 150 yards, the bullet will hit the target again in the center. But when it does, it will be going down because of the pull of gravity. So the point is we're asking for the expert to tell us which target was hit. Was it the one in the front because it was going up, or was it the one in the back? And you haven't really convinced me that we know which target it was. We don't know whether the bullet was going up or down because all we know is he assumed that the bullet was going down. Let's don't talk about the formula for one minute, and I have one last question. What prevented the state, what prevented the police department from doing another breath test about a half an hour to 45 minutes later? I do not know. Could they have? Would they have been prevented from doing it? Anything legally that would prevent them from doing it? Because no court has told them to take two tests, I guess. I mean, it might be department policy. It might be they just wanted to book her. I can't even speculate as to why they didn't take two tests. So may I just have a close if the time is up? Yes. Okay. So defendant attempts to change the standard by which the retrograde extrapolation is admissible. These were not prior bad acts in the sense that they were not. It was to show that she had decreasing intoxication, which was important to show that she had stopped drinking and thus support. But also not just because of that. It was also even without the retrograde extrapolation, there was still sufficient evidence to show that she was in control of the car and that she was intoxicated and her behavior was affected by the alcohol and not exercising good judgment. And therefore, her conviction should be affirmed. Thank you. Thank you. Just briefly, Your Honor, I think Justice Hutchinson, your question about the second test shows that this, you know, recognizing our rule still allows the police to take multiple tests and that will avoid this problem in the future. So you want us to announce a rule you have to have more than one test? No, Your Honor. Absolutely not. If you have one test, you can still put proper expert testimony in. Absolutely. And that just wasn't done in this case. And I think their formula has assumed away the important facts. Oftentimes, as we hear these DUI-related charges, there will be a conversation that they have on the street or somewhere about, well, I had my last drink, as Justice McLaren said, I had my last drink, et cetera, et cetera. When they book people, they determine whether they're male or female. They, I don't think anybody's ever weighed, but, you know, there are certain things that they can get from just the common conversation that have always been allowed. None of this occurred in this case, correct? Correct. Correct. The defendant didn't testify. And no statement of hers was a basis for the expert's testimony in this case. Did she testify? She had her last drink at 630? I don't believe it was the last drink. She said she had a drink. That was in the motion across this press. Not her last drink. I don't believe so. And they didn't look in her car to see if, you know, that's one thing that most of the time we also hear. We saw things scattered all over the car that related to the consumption of alcohol. We know they didn't search the car. The officers did testify that when, well, Officer Drew is when he arrested her, didn't see anything. But no one searched the car. So, you know, and she was drinking something, must have brought it there some way. So had they searched the car and found nothing? Had they taken into account something like the gender, weight, height, which may have been in the record, stuff like that, it may be a different case. If there are no more further questions, we'd ask you to reverse. Did you? Oh, I'm sorry. Did counsel forfeit the arguments relative to the eye test? The eye test? Yes. That is a plain error issue. Yes. Okay. I have no further questions. Thank you, Your Honor. There will be a short recess.